**LEVITT AND SONS, INC.,**
**Plaintiff,**

**v.**

**Richard A. SWIRNOW et al., Defendants.**
**Civ. No. 72-227-H.**

United States District Court,
D. Maryland.
March 21, 1973.

Benjamin R. Civiletti, John Henry Lewin, Jr. and Venable, Baetjer & Howard, Baltimore, Md., for plaintiff.

Robert W. Warfield, Baltimore, Md., for defendants Richard A. Swirnow, Babs, Inc., Registered Realty, Inc., and The Doric Co.

Eugene Hettleman, Baltimore, Md., for defendants Edward S. Kallins and Sanitary Facilities II, Inc.

HARVEY, District Judge:

This civil action has been brought by Levitt and Sons, Inc. (Levitt), a Delaware corporation, against two Maryland residents, Richard A. Swirnow and Edward S. Kallins, and four closely held Maryland corporations allegedly owned or controlled by Swirnow or Kallins.[1] Diversity jurisdiction has been alleged.

Various motions are presently before the Court. Defendants have moved to dismiss under Rule 19 of the Federal Rules of Civil Procedure, claiming that the plaintiff has failed to join indispensable parties. Defendants have also moved to dismiss under Rule 12(b)(6), claiming that the complaint fails to state a claim upon which relief can be granted. Plaintiff has moved for summary judgment as to Count 1 of the complaint under Rule 56. Defendant Sanitary Facilities II, Inc. has filed a cross motion for summary judgment as to Count 1 of the complaint. All motions have been fully briefed and argued.

### The Facts

The dispute giving rise to the pending action is the culmination of a complex and extended series of transactions involving the corporate parties and relating to the sale and development of real property located in Anne Arundel Coun-

---

1. Three of the corporate defendants are allegedly owned and controlled by Swirnow, namely The Doric Company (Doric), Babs, Inc. (Babs), and Registered Realty, Inc. (Registered). It is alleged that the fourth corporate defendant, Sanitary Facilities II, Inc. (Sanitary), is controlled by Swirnow but that a majority of the stock of such corporation is owned by Kallins.

ty, Maryland.[2]  On December 1, 1966, Rock Creek Holding Company, a Swirnow corporation not a party to this suit, transferred to defendant Registered for $211,000 certain undeveloped real property in Anne Arundel County.  This land consisted of two parcels, a subdivided tract of 42.4 acres referred to in the complaint as Section II and an unsubdivided tract of 10 acres referred to as Parcel A.  Registered held this land until April 5, 1968, on which date it transferred the land by Deed to defendant Sanitary for the stated consideration of five dollars.  That same day, Sanitary reconveyed the land to Registered by Deed and Agreement which mentioned no consideration, but which by its terms imposed annual "Sanitary Facilities Charges" on the lots located within Section II or the subdivided portion of the property.  It is the validity of these charges which is at issue in this case.

The Deed and Agreement of April 5, 1968 from Sanitary to Registered indicated that Section II would be subdivided into 264 lots, that it was the intention of Registered to provide said lots with certain water and sewer pipes and connections thereto, and that charges would be established upon the lots whereby the cost of such water and sewer facilities would be paid by the owners of the lots in thirty annual installments.[3] It was provided that each lot would be subject to the Deed and Agreement and the annual charges which would constitute a lien or encumbrance running with the land.  Under these provisions, the ultimate owner of each developed lot was required to pay the amount of the annual charges to Sanitary.

That same day, April 5, 1968, Registered by Deed conveyed Section II and Parcel A to defendant Babs, subject to the terms and conditions of the aforementioned Deed and Agreement.  Such Deed contained a covenant providing that Babs would develop the property at its own expense, including installation of the sanitary facilities which were the subject of the charges payable to Sanitary.

Finally, as the last transaction occurring on April 5, 1968, Babs conveyed Parcel A back to Registered.  As a result of these various conveyances, Babs owned Section II, Registered owned Parcel A, and Sanitary owned the now-disputed right to collect sanitary facilities charges from the ultimate owners of the lots to be developed in Section II.

Subsequent to April 5, 1968, defendant Doric became record owner of all the authorized and outstanding stock of defendant Sanitary.  The complaint alleges that the individual defendant Swirnow owns and controls the corporate defendants Babs, Registered and Doric and that he owned and controlled the corporate defendant Sanitary before its stock was acquired by Doric.

Later in 1968, defendant Kallins, allegedly a wealthy and sophisticated investor, acquired 80% of the outstanding stock of Sanitary, which was transferred to Kallins by Doric in exchange for a note of Kallins payable to Doric.  On the date that the complaint was filed, Swirnow or one Max Bloom (the son-in-law of Kallins) or Doric owned 10% of the outstanding stock of Sanitary.

In early 1970, plaintiff Levitt entered into negotiations for the purchase of both Section II and Parcel A with Babs and its President, the defendant Swirnow.  These negotiations culminated in the execution of an Agreement of Sale dated October 21, 1970 between Babs and Windward Enterprises, Inc.  Windward, a Maryland corporation, is a wholly owned subsidiary of plaintiff Levitt.

2. The facts set forth herein are those alleged in the complaint or disclosed by deeds, agreements and other documents which have been filed as exhibits.

3. The amount of such charges would be determined by multiplying the front footage of each lot by $2.20.

Such Agreement provided that Windward would purchase Section II for $870,400 and Parcel A for $106,000, and would assume the obligation of Babs to install sanitary facilities in Section II.

The Agreement of Sale between Babs and Windward contained several specific references to the sanitary facilities charges which form the basis of this suit. Paragraph 4 of the Agreement noted an understanding of the parties that charges for water and sewer facilities had been imposed on the property, and Babs warranted that it would cause such charges to be released or waived at Windward's request. In Paragraph 8(B), Babs warranted title as good and merchantable and free from encumbrances except for a certain mortgage and except for "the Sanitary Facilities Charges Deed and Agreement, unless prior to Closing Buyer [Windward] has requested Seller [Babs] to remove such charges. . . ." It is undisputed that no such request was made prior to closing.

In a confirmatory deed dated November 16, 1970, Babs conveyed to Windward Section II and Parcel A "in fee simple, subject to easements, liens, and agreements of Record." [4] Some months later, on September 23, 1971, Windward transferred Section II by deed to Levitt. Levitt developed Section II, constructed single family dwellings thereon, and sold the developed lots to individual purchasers. Before conveying Section II to Windward, Babs had on August 4, 1970 entered into a contract with Cosle Contractors, Inc., whereby Cosle agreed to construct the aforesaid sanitary facilities for a contract price of $324,609. After acquiring the Section II property, Levitt assumed the obligation of Babs to Cosle and paid the balance due for construction of the sanitary facilities.

In early October, 1971, Levitt requested of Swirnow and Babs that the sanitary facilities charges be waived in accordance with Paragraph 4 of the Agreement of Sale between Windward and Babs. Defendant Swirnow responded that a misunderstanding apparently existed and that the charges would not be released without the pre-payment of $1,200 per lot. Levitt thereafter brought this action.

### The Prayer for Relief

The complaint is in four counts. In Count One, plaintiff alleges that the corporate defendants have been created and utilized by defendant Swirnow for the purpose of perpetrating fraud upon Windward, plaintiff and all subsequent purchasers of portions of Section II, that the conveyances between the corporate defendants were made to defraud subsequent purchasers and that said fraudulent conveyances were no more than conveyances and undertakings between defendant Swirnow and himself. Plaintiff asks this Court to enter a judgment declaring that the purported sanitary facilities obligations, sought to be imposed on lot owners and the lots themselves, are null and void and constitute an invalid cloud upon plaintiff's title to the land and upon the title of the lot owners who have purchased lots from plaintiffs. Plaintiff also seeks in Count One a permanent injunction against all defendants prohibiting the collection of said charges from plaintiff or from the owners of lots.

In Count Two, plaintiff seeks specific performance by defendants Swirnow and Babs of their alleged undertaking to remove the sanitary facilities charges from the lots included in Section II.[5]

Count Three seeks compensatory and punitive damages from defendants Swir-

---

4. Earlier that same day, Registered had conveyed Parcel A back to Babs, thereby enabling Babs to transfer such property to Windward.

5. The essential factual allegations contained in Count One are realleged and incorporated by reference in Counts Two, Three and Four.

now and Babs because of false and misleading representations allegedly made in the course of the transactions between the parties for the purpose of defrauding plaintiff.

In Count Four, plaintiff asks the Court to impress a trust for its benefit upon the right of defendant Sanitary to collect the sanitary facilities charges in question.

## Discussion

The first question presented by the pending motions is whether this action has properly been brought in a federal court. It is undisputed that a state forum is available to the plaintiff for the relief being sought in this suit. Plaintiff, however, has invoked the diversity jurisdiction of this Court, and this action is properly here unless, as claimed by defendants, Rule 19 requires the joining of certain allegedly indispensable parties as additional plaintiffs. See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 108–109, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

Defendants contend that Windward and the present owners of the lots in Section II are indispensable parties to this action. Inasmuch as Windward is a Maryland corporation and the lot owners are Maryland residents, diversity jurisdiction would be destroyed were these parties to be joined as plaintiffs. Resolution of the question presented requires analysis of the requirements of Rule 19 in the light of the circumstances of this case.

Rule 19 provides in pertinent part as follows:

"(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

"(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

This Court recently had occasion to discuss in some detail the requirements of Rule 19 under somewhat different facts from those involved herein. In Potomac Electric Power Company v. Babcock & Wilcox Company, 54 F.R.D

486 (D.Md.1972),[6] this Court held that Rule 19 required joinder of a non-diverse party plaintiff in an action for damages brought by an insured and its insurers against various corporations responsible for manufacturing and supplying allegedly defective parts of steam generating units. Since another forum was available for the plaintiffs to secure the same relief sought in their federal action, and since various factors indicated prejudice to the defendants if the suit were litigated in federal court, it was determined in the *Pepco* case that in equity and good conscience the action should be dismissed under Rule 19. 54 F.R.D. at 491–492.

Although the facts in this action are somewhat different from those in *Pepco*, the principles of that case are controlling here. This Court concludes that the circumstances here require that this action must be dismissed under Rule 19 because certain indispensable parties have not been joined.

■ The owners of the lots in Section II are under Rule 17, F.R.Civ.P., quite clearly real parties in interest as to the claim asserted in Count One. It is the title to their property that is encumbered by the sanitary facilities charges in question. Under Counts Two and Three, Windward would similarly appear to be the party which has the right to be enforced under the substantive law. Representatives of Windward negotiated the Agreement of Sale of October 21, 1970 which led to the claims asserted under the second and third Counts. But the fact that these additional parties *should* be joined as real parties in interest does not mean that they *must* be joined, if the effect of their joinder would be dismissal of the action because diversity was destroyed. *Pepco, supra* at 490. It must further be determined whether these necessary parties are indispensable under Rule 19.

Analysis of the facts indicates that the individual lot owners and Windward fit the description in Rule 19(a)(1)–(2) of persons who cannot be made a party without depriving this Court of jurisdiction. Count One seeks the removal of an alleged cloud on title to real property owned by individuals, and these individual owners obviously have a substantial and direct interest in the outcome of this phase of litigation. In their absence, complete relief by way of a declaratory judgment or an injunction can hardly be granted. See Rule 19(a)(1). If this Court were to conclude that under Maryland law the sanitary facilities charges in question were valid and enforceable encumbrances, an individual property owner who did not agree with that ruling would not be bound by it but would be entitled to seek a re-determination in a state court of the legal question involved. In the absence of the property owners as parties to this action, defendants incur a substantial risk of inconsistent rulings by state and federal courts. See Rule 19(a)(2)(ii).

Plaintiff argues that the property owners need not be joined because they are protected by title insurance and because plaintiff has agreed to indemnify the title insurance company in the event the charges are held to be valid by this Court. But if held to be valid, the charges by their terms run with the land for a period of 30 years and constitute a lien upon the title itself. Such a lien is not removed by a contractual undertaking of indemnification, which may not even extend to subsequent owners of the lots. In the event such contractual obligation were not met for any reason at all during the 30 year period, the property owner would be the one compelled to pay or to suffer foreclosure of the lien in question. Insofar as the property owner is concerned, complete relief cannot be achieved without a decree of court or a recorded release removing the encumbrance. Plaintiff ap-

**6.** That case is referred to herein as "the *Pepco* case" or "*Pepco*".

parently has no control over the owners of the developed lots in Section II and could not prevent a lot owner from seeking at some future date in a state court to clear his title once and for all. Particularly if a property owner encountered difficulty in selling his home because of such lien might he wish to resort to a state court proceeding to remove this cloud from his title. A decree of this Court upholding the validity of the charges in question would not prevent re-litigation of the question by one not a party hereto.

■ Both the right to specific performance asserted in Count Two and the claim of fraud asserted in Count Three arise as a result of negotiations which led to the execution of the Agreement of October 21, 1970 between Babs and Windward. The complaint alleges that false representations were made to plaintiff and Windward and that Windward, plaintiff and all subsequent purchasers have been defrauded. Yet Windward is not a party to this action. Plaintiff Levitt seeks to treat these transactions as if they were between Levitt and Swirnow, even though neither were parties to the Agreement or to the subsequent Confirmatory Deed. But Levitt is estopped from denying the corporate existence of its subsidiary as against persons who dealt with the corporation. 6 M.L.E. Corporations, § 16 at page 185. A subsidiary corporation is a separate corporate entity even though all its stock may be owned by another corporation, and the parent's argument is not tenable that the subsidiary's existence should be disregarded because of technical assignments within the parent's family. Food Fair Stores, Inc. v. Blumberg, 234 Md. 521, 529, 200 A.2d 166 (1964). The allegations of the complaint and the documents filed as exhibits indicate that Windward and individuals acting for Windward had a substantial role in the transactions which led to the dispute presently before the Court. Without Windward as a party

plaintiff, defendants, even though successful here, face the risk of a subsequent suit by Windward, the party most directly involved in the transactions which form the basis for Counts Two and Three.

Having determined that Windward and the lot owners are persons described in subdivision (a)(1)–(2) of Rule 19 who cannot be made parties without depriving the Court of jurisdiction, the Court is next required by subdivision (b) to determine if in equity and good conscience the action should proceed with the parties before it or should be dismissed. The Rule 19(b) factors that apply in this case compel the conclusion that the missing parties here should be regarded as indispensable and the action accordingly dismissed. Pragmatic considerations should be controlling rather than the technical or abstract character of the right involved. *Pepco, supra* at 491.

As in the *Pepco* case, there is another forum available for determination of the substantial questions raised in this suit. Windward, Levitt and the lot owners have available to them the Circuit Court for Anne Arundel County for the vindication of their rights. It is not even necessary to join all the several hundred property owners as parties plaintiff. Maryland law permits a class action to be maintained by one such owner on behalf of all where there are common questions of law and fact and joinder of all persons is impracticable. Rule 209, Maryland Rules of Procedure. Accordingly, the fourth factor specified in subdivision (b) has been satisfied in this case. As in *Pepco*, under the circumstances of this case, the fourth factor is the most important, followed in importance by the first factor. 54 F.R.D. at 491.

With reference to the first factor in subdivision (b), this Court has discussed hereinabove the substantial risk of further litigation faced by the defendants if the absent parties are not joined. If

this action proceeds in this Court, defendants are prejudiced by the risk of facing further litigation in a state court, which would not be bound by this Court's determinations as to state law. If the action goes ahead in a state court, all parties could be joined and all would be bound by the judgment entered.

■ Other factors indicate that in equity and good conscience the absent parties should be held to be indispensable. A determination of the validity of the sanitary facilities charges in question involves questions of state law which have not as yet been decided. The State of Maryland has a fundamental concern in actions involving real property located within its jurisdiction, and Maryland courts are uniquely competent to hear and decide questions raised by such actions. See Broussard v. Columbia Gulf Transmission Co., 398 F.2d 885, 889 (5th Cir. 1968). Where, as here, a diversity case raises an unresolved question of state law, a federal court should not stretch to retain jurisdiction. D. A. Foster Equipment Corp. v. Fidelity & Casualty Co., 262 F.Supp. 278 (D.Md.1966).

■■ In equity and good conscience, it seems inappropriate to permit a plaintiff to overlook parties with substantial interests in a litigation so that federal jurisdiction may exist. See *Pepco, supra* 54 F.R.D. at 492. Particularly should a parent corporation not be permitted to disregard the existence and activities of its subsidiary so that diversity jurisdiction will not be destroyed. The complex and extended transactions involving the real property here suggest that the issues can best be resolved if all the corporate parties are before the court making the determinations.

■ Successive Congressional enactments relating to diversity jurisdiction have been designed to restrict federal jurisdiction to matters which are distinctly federal in nature and to relieve the federal courts of matters which by their nature belong in the state courts. See Indianapolis v. Chase National

Bank, 314 U.S. 63, 76, 62 S.Ct. 15, 86 L. Ed. 47 (1941); McSparran v. Weist, 402 F.2d 867, 876 (3d Cir. 1968). Were indispensability a benefit which might be easily disregarded by a party in order to secure diversity jurisdiction, federal courts would lose control over their jurisdictional boundaries and would be compelled to hear matters traditionally reserved for state courts. Under circumstances such as those present here, parties should present their claims in a state court rather than attempt to manipulate jurisdiction by failing to join others with a substantial interest in the litigation solely for the purpose of conferring jurisdiction on a federal court. See *Pepco, supra* 54 F.R.D. at 492.

Because of this Court's conclusion under Rule 19, none of the other questions presented have been reached. For the reasons stated herein, defendants' motions to dismiss are granted with costs. An appropriate order will be entered.