**RPR & ASSOCIATES, Plaintiff,**

v.

**O'BRIEN/ATKINS ASSOCIATES, P.A. and Tai and Associates, Defendants.**

**No. 1:94CV00706.**

United States District Court, M.D. North Carolina, Durham Division.

Dec. 28, 1995.

Allen Holt Gwyn, Jr., Patton Boggs, L.L.P., Greensboro, NC, Steven Douglas Hedges, Patton Boggs, L.L.P., Greensboro, NC, for RPR & Associates, Inc.

John Lewis Shaw, Poyner & Spruill, L.L.P., Raleigh, NC, James Moore Tatum, Jr., Moore & Van Allen, Durham, NC, for O'Brien/Atkins Associates, P.A.

James Moore Tatum, Jr., Moore & Van Allen, Durham, NC, Dailey J. Derr, Dailey J. Derr, P.A., Durham, NC, for Tai and Associates.

## MEMORANDUM OPINION

OSTEEN, District Judge.

This matter comes before the court on Defendants' motions to dismiss complaint. Defendants cite several grounds for dismissal: (1) Fed.R.Civ.P. 12(b)(1) and 12(b)(2) for lack of subject matter jurisdiction and personal jurisdiction over Defendants on grounds of sovereign immunity; (2) Rule 12(b)(7) for failure to join a necessary and indispensable party; and (3) abstention. In addition, Defendant O'Brien/Atkins Associates filed a motion to dismiss under Rule 12(b)(1) and 12(b)(2) for lack of subject matter jurisdiction and personal jurisdiction on grounds of arbitral immunity.

For the reasons stated herein, both motions will be denied.

## I. FACTS

On June 7, 1988, Defendant O'Brien/Atkins Associates ("O'Brien") was hired as the architect for the George Watts Hill Alumni

Center located on the campus of the University of North Carolina at Chapel Hill ("University") for its owner, the State of North Carolina by and through the University of North Carolina at Chapel Hill. The University hired Defendant Tai and Associates ("Tai") on July 28, 1988, to provide services as consulting engineer. Specifically, Tai was retained to perform site condition tests at the location. Plaintiff RPR and Associates ("RPR") was awarded the contract for the general construction work on the project and was one of the State's prime contractors on this multi-prime project.

Plaintiff alleges that both Defendant O'Brien and Defendant Tai committed numerous negligent acts and omissions that proximately caused Plaintiff substantial damage, losses, and delay on the project. Plaintiff now seeks to recover against them individually for their negligence.

In December 1990, while construction of the Alumni Center was ongoing, Plaintiff initiated an administrative proceeding before the North Carolina Office of State Construction, pursuant to N.C.Gen.Stat. § 143–135.3, for more than $4,000,000. The claims now pending in the administrative proceeding principally involve claims against fellow prime contractors and claims for interest on retainage held by the State. Those claims allege the liability of the State for numerous delays and items of extra cost arising from alleged defaults and shortcomings in the administration of the project by the State and O'Brien. The proceeding is ongoing and the conclusion date is unascertainable.

Defendants O'Brien and Tai each filed a motion to dismiss the complaint pursuant to Rule 12(b)(1) and 12(b)(2), claiming that the court lacks both subject matter jurisdiction and personal jurisdiction over Defendants. Both Defendants claim that they are clothed with the State's sovereign immunity because they are acting in their capacity as agents for the State of North Carolina.

In addition, Defendants assert that the complaint should be dismissed under Rule 12(b)(7) because Plaintiff has failed to include an indispensable party, the State of North Carolina. Defendant O'Brien moves for dismissal under Rule 12(b)(1) and 12(b)(2) alleging that it is entitled to arbitral immunity. Furthermore, both Defendants move for dismissal on grounds of abstention because: (1) the case involves complicated issues of state law; and (2) the exact matters at issue in this suit are currently pending in state administrative proceedings before the Office of State Construction.

## II. DISCUSSION

### A. Rule 12(b)(1)—Sovereign Immunity

■ As an initial matter, the court recognizes that there is confusion as to whether a motion raising the defense of sovereign immunity should be brought as a challenge to subject matter jurisdiction under Rule 12(b)(1) or a challenge to the court's personal jurisdiction under Rule 12(b)(2). Some circuits have found that a motion under Rule 12(b)(2) for lack of personal jurisdiction is not the proper mechanism for raising an immunity defense. "The question of immunity does not bear on the question of amenability, or personal jurisdiction." *Petrol Shipping Corp. v. Kingdom of Greece*, 360 F.2d 103, 107 (2d Cir.), *cert. denied*, 385 U.S. 931, 87 S.Ct. 291, 17 L.Ed.2d 213 (1966). The North Carolina Supreme Court has declined to decide whether state sovereign immunity should be raised as lack of subject matter jurisdiction or lack of personal jurisdiction. *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 293 S.E.2d 182 (1982). As several federal courts have done in other cases, this court will treat Defendants' motions to dismiss on grounds of immunity in this case only as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

■ Under Fourth Circuit precedent, a Rule 12(b)(1) motion should be granted only in very limited circumstances. A "complaint should not be . . . dismissed [in this manner] merely because the court doubts that the plaintiff will ultimately prevail; so long as a plaintiff colorably states facts which, if proven, would entitle him to relief, the motion to dismiss should not be granted." *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir.1982) (citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In a Rule 12(b)(1) case, the court must give the plaintiff the

same procedural protections provided under Rule 12(b)(6); thus, all the facts alleged in the complaint are assumed true and all factual inferences are drawn in the plaintiff's favor. *Id.* at 1219. The "moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992).

■ Defendants O'Brien and Tai argue that the action should be dismissed because they are both clothed with the State's sovereign immunity. Defendants' argument fails to convince the court. The State could not be sued by Plaintiff unless it consents to be sued. *State v. Taylor,* 322 N.C. 433, 368 S.E.2d 601 (1988). However, state statutes specifically provide for actions based on breach of contract claims under state construction projects. *See* N.C.Gen.Stat. § 143-135.3. The North Carolina Supreme Court has ruled that the exclusive remedy for aggrieved contractors for breach of a state construction contract is specifically set forth in the statute. *Middlesex Constr. Corp. v. State ex rel. State Art Museum Bldg. Comm'n,* 307 N.C. 569, 299 S.E.2d 640 (1983), *reh'g denied,* 310 N.C. 150, 312 S.E.2d 648 (1984). In this case, Plaintiff does not seek to sue or recover from the State. Instead, Plaintiff seeks to recover against Defendants O'Brien and Tai in their individual capacities.

■ In addition, Defendants claim the status of public officers contending that they may only be held liable if they act outside the scope of their duties. This argument is unpersuasive. The facts do not support the assertion that either Defendant is a public official or should be treated as such. It is true that full-time employees of the State are not liable in negligence in connection with their professional activities on behalf of the State in the absence of wanton negligence, corruption, or malice. *Wilkins v. Burton,* 220 N.C. 13, 16 S.E.2d 406 (1941). Neither Defendant O'Brien nor Defendant Tai is an employee of the State. Both Defendants are independent contractors hired by the State to assist with the construction of the Alumni Center. Thus, they are neither full-time employees of the State nor public officials and will not be treated as such.

■ According to North Carolina law, architects and engineers are liable in tort for negligence in the performance of their professional duties. *Quail Hollow East Condominium Ass'n v. Donald J. Scholz Co.,* 47 N.C.App. 518, 268 S.E.2d 12, *cert. denied,* 301 N.C. 527, 273 S.E.2d 454 (1980). For purposes of imposing liability, it is irrelevant whether the contractor or architect is acting on his own behalf or under contract with another. *Shoffner Indus., Inc. v. W.B. Lloyd Constr. Co.,* 42 N.C.App. 259, 265, 257 S.E.2d 50, 55 (1979) (citing *Council v. Dickerson's, Inc.,* 233 N.C. 472, 64 S.E.2d 551 (1951)). Because of the amount of control that architects and engineers exercise over construction projects, there are compelling reasons to hold them accountable to the contractors who rely on their work. In *Shoffner,* the North Carolina Court of Appeals decided that

[a]ltogether too much control over the contractor necessarily rests in the hands of the supervising architect for him not to be placed under a duty imposed by law to perform without negligence his functions as they affect the contractor. The power of the architect to stop the work alone is tantamount to a power of economic life or death over the contractor. It is only just that such authority, exercised in such a relationship, carry commensurate legal responsibility.

*Id.* at 266, 257 S.E.2d at 55 (quoting *United States v. Rogers & Rogers,* 161 F.Supp. 132, 136 (S.D.Cal.1958)). Defendants should, therefore, be directly liable to Plaintiff for their alleged negligent acts, if actual proof supports the allegations.

North Carolina courts repeatedly have denied a claim to sovereign immunity by private parties. The North Carolina Supreme Court set out the state of the law in *Shingleton v. State,* 260 N.C. 451, 133 S.E.2d 183 (1963):

When public officers whose duty it is to supervise and direct a State agency attempt or threaten to invade the property rights of a citizen in disregard of law, they

are not relieved of responsibility by the immunity of the State from suit, even though they act or assume to act under the authority and pursuant to the directions of the State. *Id.* at 458, 133 S.E.2d at 188. "Likewise, private parties would not be relieved of responsibility when they assumed to act under such authority." *Clark v. Asheville Contracting Co.,* 316 N.C. 475, 486, 342 S.E.2d 832, 838 (1986); *see also Broadhurst v. Blythe Bros. Co.,* 220 N.C. 464, 17 S.E.2d 646 (1941) (holding that a contractor, though working under contract with the Highway Commission, was not relieved of liability through the State's sovereign immunity for injuries caused by the contractor's negligence).

The Fourth Circuit has also interpreted North Carolina law in this area. In *Asheville Constr. Co. v. Southern Ry.,* 19 F.2d 32 (4th Cir.1927), a contractor constructing a road for the State was sued for property damage arising from his work. The circuit court rejected the contractor's defense of sovereign immunity stating that "there can be no doubt that the contractor and subcontractor are liable for the damages caused." *Id.* at 34. The court continued, "[t]he presumption is heavily against any one who sets up the sovereign prerogative of a state as the reason why he should not be held answerable for his own wrongdoing." *Id.*

In the present action, any judgment received by Plaintiff will be satisfied against Defendants O'Brien and Tai. This action seeks merely to determine the rights of private parties. Under no circumstances will the recovery lie against the State. Thus, there is no need to guard the State's coffers and no justification to extend sovereign immunity to Defendants.

■■ Defendants' claim that the present lawsuit should be barred by the Eleventh Amendment is also unavailing. The Eleventh Amendment provides a State sovereign immunity from a private party action seeking monetary damages in federal court. *Keller v. Prince George's County,* 923 F.2d 30, 32 (4th Cir.1991). This immunity extends to any entity that legitimately can be characterized as an arm of the State. *Id.* As previously mentioned, any judgment rendered against Defendants will not be satisfied from the treasury of the State. Thus, Eleventh Amendment immunity is not implicated. Defendants are being sued in their individual capacities based upon their alleged breach of duties owed to Plaintiff under applicable North Carolina law.

■ Defendant O'Brien also claims immunity from liability based on its status as arbiter of disputes between RPR and the State. Defendant O'Brien cites contract language which states that the "designer is the impartial interpreter of the contract documents, and, as such, he shall exercise his powers under the contract to enforce faithful performance by both the owner and the contractor, taking sides with neither." (Def. O'Brien's Br. in Supp. of Mot. to Dismiss Compl. at 6.) Thus, as far as disputes between Plaintiff and the State are concerned, Defendant O'Brien contends that it is entitled to arbitral immunity for breach of its duties to act as interpreter of the contract documents.

■ According to the North Carolina Supreme Court, a design professional, in the absence of bad faith, will not be liable in damages to a contractor or owner when the professional is acting in the capacity of an arbitrator of a contract dispute between the contractor and the owner. *City of Durham v. Reidsville Eng'g Co.,* 255 N.C. 98, 103, 120 S.E.2d 564, 567 (1961). This immunity, however, is not universal, and the engineer or contractor could be held liable for negligence in the performance of the engineer's or contractor's own duties. *Id.* at 103, 120 S.E.2d at 567. Plaintiff does not assert any claims against the State. Rather, Plaintiff is seeking to recover from Defendant O'Brien for Defendant O'Brien's own breach of contract. The court finds that when an architect acts not as an arbitrator, but as an architect, the arbitral immunity vanishes and the architect is susceptible to legal action.

For the reasons stated herein, Defendants' motions to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction will be denied.

### B. Rule 12(b)(7)—Failure to Join a Necessary and Indispensable Party

Rule 19 sets out separate tests for determining whether a party is "necessary" and "indispensable." Only necessary parties can be indispensable, but not all necessary parties are indispensable. *Schlumberger Indus., Inc. v. National Sur. Corp.*, 36 F.3d 1274, 1285–86 (4th Cir.1994). In determining whether a party is necessary and ultimately indispensable, the court must consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

On a motion under Rule 12(b)(7), the court initially determines if the absent party should be joined as a party in accordance with the criteria set forth in Rule 19(a).[1] If the court finds that the party is indeed necessary, the party will be ordered into the action. When the absent party cannot be joined, the court will determine, by analyzing the factors described in Rule 19(b),[2] whether to proceed without the absent party or to dismiss the action. 7 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1609 (1986). In general, federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder, and dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result. *See Provident*

*Tradesmens Bank & Trust*, 390 U.S. at 118, 88 S.Ct. at 742.

In the present case, Defendants contend that the State is a necessary party because of the possibility of an assertion for contribution or indemnity against the State, if Plaintiff were to prevail in an action against Defendants. As a result, complete relief is not available in this proceeding. The United States Supreme Court has flatly rejected this argument. *Temple v. Synthes Corp.*, 498 U.S. 5, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990). In *Temple*, the Court held that potential joint tortfeasors were only permissive parties, not necessary parties. *Id.* at 8, 111 S.Ct. at 316. The Court held that "it has long been the rule that it is not necessary for all joint tortfeasors to be named defendants in a single lawsuit."

The argument by Defendants also runs contrary to precedent in this circuit. In *United States v. Arlington County, Va.*, 669 F.2d 925, 929 (4th Cir.), *cert. denied*, 459 U.S. 801, 103 S.Ct. 23, 74 L.Ed.2d 39 (1982), the Fourth Circuit held that the reference to complete relief in Rule 19(a) applies only to "relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *See Atlantic Aero, Inc. v. Cessna Aircraft Co.*, 93 F.R.D. 333, 335 (M.D.N.C.1981) (holding that possible indemnity rights against a party do not make an absent joint tortfeasor an indispensable party).

1. Rule 19(a) provides, in pertinent part:
   (a) **Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest....

2. Rule 19(b) provides:
   (b) **Determination by Court Whenever Joinder not Feasible.** If a person as described in

subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Defendants contend that the State "claims an interest ... that it will be unable to protect without being joined." (Def. O'Brien's Br. in Supp. of Mot. to Dismiss Compl. at 14; Def. Tai's Br. in Supp. of Mot. to Dismiss Compl. at 9.) Defendants, however, have not met the burden of producing any evidence showing the nature of the interest or the possibility of impairment of the interest. To the extent that the State has any interest, it could protect its rights by appearing voluntarily. *Sindia Expedition, Inc. v. Wrecked and Abandoned Vessel, Known as The Sindia,* 895 F.2d 116, 122 (3d Cir.1990).

Defendants need not be concerned that the State will be bound by the instant action. North Carolina courts apply collateral estoppel to bar relitigation of an issue that was actually decided by and necessary to a final judgment in a prior action only if the parties to be bound by the prior decision are the same or are in privity with a party of the prior action. *Hales v. North Carolina Ins. Guar. Ass'n,* 337 N.C. 329, 445 S.E.2d 590 (1994). For purposes of collateral estoppel, privity is defined as a "mutual or successive relationship to the same rights to property." *Id.* at 334, 445 S.E.2d at 594. In addition, the North Carolina Supreme Court has rejected the idea that "a person may be bound by a judgment even though not a party if one of the parties to this action is so closely aligned with his interest as to be his virtual representative." *Id.* at 336, 445 S.E.2d at 595. Thus, there is no legal or factual showing that the State will be bound in any way by the present adjudication.

If the State is found liable to RPR in the state administrative proceeding and the State subsequently sues Defendants O'Brien and Tai for contribution or indemnity, Defendants will not be exposed to inconsistent obligations under the meaning of Rule 19(a)(2)(ii). The rule protects against obligations that are inconsistent rather than adjudications that are inconsistent. *See Micheel v. Haralson,* 586 F.Supp. 169 (E.D.Pa. 1983); 3A James W. Moore et al., *Moore's Federal Practice* ¶ 19.07 (1994). Rule 19 is not triggered by the possibility of a subsequent adjudication that may result in a judgment that is inconsistent as a matter of logic.

*Field v. Volkswagenwerk AG,* 626 F.2d 293, 301–02 (3d Cir.1980). The mere risk that a defendant who has successfully defended against a party may be found liable to another plaintiff in a subsequent action does not necessitate joinder of all of the parties in one action. *Id.* at 302.

For the reasons stated herein, the State is not a necessary party to the present action. Therefore, Defendants' motions to dismiss under Rule 12(b)(7) for failure to join a necessary and indispensable party will be denied.

Even assuming that the State is a necessary party, the court must determine if the State is an indispensable party to the case at bar. After analyzing the factors in Rule 19(b), the court concludes that insufficient evidence exists to find that the State is an indispensable party.

### C. Abstention

The United States Supreme Court has articulated several situations in which a federal court should decline to exercise jurisdiction. One of the most notable of these situations was first discussed in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and has come to be known as the *Burford* Doctrine. In *Burford,* the Court held that a federal district court may, in its discretion, decline jurisdiction in order to avoid conflicting with matters of important state policy. *Id.* at 317–18, 63 S.Ct. at 1099. Nevertheless, it is a fundamental principle of federal jurisdiction that abstention is the exception, not the rule. *Pomponio v. Fauquier County Bd. of Supervisors,* 21 F.3d 1319, 1324 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 192, 130 L.Ed.2d 125 (1994) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)).

In a fairly recent application of the *Burford* Doctrine, the Court clarified the application and further set out the elements. In *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), the Court wrote:

Where timely and adequate state-court review is available, a federal court sitting in

equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Id.* at 361, 109 S.Ct. at 2514 (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1245). If it is determined that an action falls within either of these two categories, the federal court must abstain. *Pomponio,* 21 F.3d at 1326.

In the present case, Defendants argue that abstention is proper because the same matter is pending in a state administrative forum that can afford more complete relief than the federal forum. In addition, Defendants argue that the case involves unclear and complicated issues of state law.

Plaintiff does not challenge the legality of North Carolina's statutory scheme for resolving disputes between contractors and the State, nor does it challenge the mandated administrative proceeding before the Office of State Construction. Further, Plaintiff contends that no difficult issues of state law are involved. Plaintiff merely seeks legal redress from Defendants based on settled principles of state law. Moreover, Plaintiff asserts that the state administrative proceeding involves only Plaintiff and the State of North Carolina and is totally independent from this federal action. Any claim that Plaintiff may have against Defendants is not before the Office of State Construction.

The court finds merit in Plaintiff's argument and, thus, finds that abstention in the present case is not warranted. As a result, Defendants' motions to dismiss based on grounds of abstention will be denied.

## III. CONCLUSION

For purposes of this memorandum opinion, the court will grant Defendant O'Brien/Atkins' Motion for Leave to File Supplemental Brief in Support of Motion to Dismiss. The court has considered the brief in its determination of Defendant O'Brien/Atkins' Motion to Dismiss Complaint.

For the reasons stated herein, Defendants' motions to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction over Defendants on grounds of sovereign immunity will be denied. Further, Defendants' motions under Rule 12(b)(7) for failure to join a necessary and indispensable party will be denied. In addition, Defendant O'Brien/Atkins' motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction over Defendant O'Brien/Atkins on grounds of arbitral immunity will be denied. Finally, Defendants' motions to dismiss based on grounds of abstention will be denied.

In addition, Defendants' Motion to Stay Discovery is by reason of this memorandum opinion rendered moot.