**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TEAMSTERS LOCAL UNION NO. 171, a
labor organization,
<u>Plaintiff-Appellant,</u>

v.                                                                        No. 98-1292

KEAL DRIVEAWAY COMPANY, an Ohio
Corporation,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CA-97-536-R)

Argued: January 25, 1999

Decided: March 29, 1999

Before WILKINSON, Chief Judge, and WILLIAMS and
MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Williams and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** James Francis Wallington, BAPTISTE & WILDER, P.C.,
Washington, D.C., for Appellant. R. Ian Hunter, DEAN & FULKER-
SON, P.C., Troy, Michigan, for Appellee. **ON BRIEF:** Patricia M.
Morrow, DEAN & FULKERSON, P.C., Troy, Michigan, for Appel-
lee.

**OPINION**

WILKINSON, Chief Judge:

Two local affiliates of the International Brotherhood of Teamsters -- Local 171 and Local 964 -- and Keal Driveaway Company appeared before a joint grievance committee to settle the seniority treatment of employees transferring from one local to the other. Upon the committee's decision, the losing local -- Local 171 -- filed suit against the employer to vacate the arbitral award. Local 171 charged that the employer breached its collective bargaining agreement and the union members of the grievance committee breached their duty of fair representation. By suing only the employer and not Local 964, however, Local 171 seeks to vacate an arbitral award without the presence of the winning party. We hold that Local 964 is an indispensable party to the dispute under Rule 19 of the Federal Rules of Civil Procedure, and we affirm the dismissal of this case without prejudice.

I.

Keal Driveaway Company is an Ohio corporation in the business of transporting motor vehicles for their manufacturers. This controversy involves employees of two of Keal Driveaway's transportation terminals: an active terminal in Dublin, Virginia, and a former terminal in Orrville, Ohio.

At the time this dispute arose the unionized drivers and deckers of the two terminals were represented by two local affiliates of the International Brotherhood of Teamsters. Local 171, located in Roanoke, Virginia, represented the Dublin employees, while Local 964, based in Cleveland, Ohio, represented the Orrville employees. Keal Driveaway, Local 171, Local 964, and the Teamsters National Negotiating Committee were all signatories to a multi-employer, multi-union collective bargaining agreement, the National Master Automobile Transporters Agreement. This contract provided the seniority rules for the members of the two locals, as well as a grievance and arbitration procedure for the resolution of disputes.

The Dublin and Orrville terminals were each located next to assembly plants operated by Volvo Trucks of North America. In October 1996 Volvo notified Keal Driveaway that it was closing its Orrville plant and consolidating its production in Dublin. As a result, Keal Driveaway decided to close its Orrville facility.

Upon notification of the terminal closing Local 964 filed a grievance requesting a determination of the seniority rights of the Orrville employees. Under the National Agreement, such grievances are considered by the National Joint Standing Seniority Committee (NJSSC), which is composed of an equal number of union and management members. The Committee docketed Local 964's grievance for consideration on March 12, 1997, and named Local 171 and Keal Driveaway as defending parties.

At the NJSSC hearing Local 964 argued, under Article 5, section 7(b)(2) of the National Agreement, that the Orrville employees should be able to transfer to the Dublin terminal to the extent work was available and that they should take their seniority with them. In other words, Local 964 contended that transferring employees should be dovetailed, or merged in seniority order, into the Dublin seniority list. Local 171 agreed that the Orrville employees could transfer to Dublin but argued that transferring employees should lose their seniority and be endtailed, or tacked onto the bottom of the list. Rather than take a position, Keal Driveaway merely reiterated the positions of the local unions and asked the NJSSC panel to provide the company with an interpretation of the contract.

In May 1997 the NJSSC panel entered a decision for Local 964. The panel found that the Orrville employees could transfer to the Dublin terminal to the extent work was available and held that transferring employees would be dovetailed. In the ensuing months Keal Driveaway implemented the NJSSC's decision by transferring all willing Orrville employees to Dublin. Local 171 asked the panel for reconsideration of its award in August 1997, but the panel declined.

Local 171 then filed this suit in the United States District Court for the Western District of Virginia, charging under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C.§ 185, that Keal Driveaway had breached its contract with Local 171 and that the

3

union members of the NJSSC had breached their duty of representation and asking the court to vacate the panel's award. Local 171 named only Keal Driveaway as a defendant in the case-- it did not name Local 964, the NJSSC, or the Teamsters National Negotiating Committee. On Keal Driveaway's motion the district court found that Local 964 was a necessary party to the suit that could not be joined for want of personal jurisdiction. Holding that it could not in equity or good conscience proceed in the absence of Local 964, the court dismissed the case without prejudice pursuant to Rule 19(b) of the Federal Rules of Civil Procedure. Local 171 appeals.

## II.

By forcing a court to examine the effects of a suit on parties not before it, Rule 19 of the Federal Rules of Civil Procedure "takes . . . account of the very real, very substantive claims to fairness on the part of outsiders that may arise in some cases." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 125 (1968). Rule 19 creates a two-step inquiry: first, whether a party is necessary to a proceeding because of its relationship to the matter under consideration;[1] and second, if a necessary party is unavailable, whether the proceeding can continue in that party's absence.[2] Fed. R. Civ. P. 19(a), (b).

_____

[1] A party is necessary and "shall be joined" if

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

[2] Under this second inquiry,

> [i]f a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the

If it cannot, the party is indispensable and the action should be dismissed.

Dismissal of a case is a drastic remedy, however, which should be employed only sparingly. When an action will affect the interests of a party not before the court the ultimate question is this: Were the case to proceed, could a decree be crafted in a way that protects the interests of the missing party and that still provides adequate relief to a successful litigant? Provident Tradesmens Bank & Trust Co., 390 U.S. at 112 n.10. Although framed by the multi-factor tests of Rule 19(a) & (b), "a decision whether to dismiss must be made pragmatically, in the context of the substance of each case, rather than by procedural formula." Id. at 119 n.16 (internal quotation marks omitted). A court must examine the facts of the particular controversy to determine the potential for prejudice to all parties, including those not before it. Schlumberger Indus., Inc. v. National Sur. Corp., 36 F.3d 1274, 1285-86 (4th Cir. 1994).

In the instant case, the district court properly held that Local 964 is an indispensable party whose absence requires dismissal. After losing a grievance before what is essentially an arbitral panel, Local 171 sought to vacate the result of that proceeding without the presence of its victorious adversary. It is plain not only that Local 964 should have been joined in this action "if feasible," but also that the district court could not "in equity and good conscience" have proceeded in that party's absence. Fed. R. Civ. P. 19 (a), (b).

A.

Local 964 is necessary to this litigation for two reasons. First, permitting the action to proceed would impair the interests of Local 964.

_____

court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed R. Civ. P. 19(b).

5

Fed. R. Civ. P. 19(a)(2)(i). Like many suits under section 301 of the LMRA, this action at bottom concerns the joint grievance panel's interpretation of the collective bargaining agreement -- an interpretation ultimately made in favor of Local 964 as a result of a grievance that Local 964 filed. See Vaca v. Sipes, 386 U.S. 171, 183-87 (1967). Since the very purpose of Local 171's suit is to vacate the contract interpretation for which Local 964 fought, permitting this suit to proceed to judgment could "impair or impede" Local 964's ability to protect its interests under its contract with Keal Driveaway. Id.; see Delta Fin. Corp. v. Paul D. Comanduras & Assocs., 973 F.2d 301, 305-06 (4th Cir. 1992) (parties to a contract are necessary parties to a suit on that contract); see also General Warehousemen & Helpers Local 767 v. Standard Brands, Inc., 579 F.2d 1282, 1289-91 (5th Cir. 1978) (en banc) (noting that a union has "a not insubstantial interest in the maintenance of its contractual right" to bargain, but deferring the Rule 19 issue).

Second, permitting this suit to continue could subject Keal Driveaway to conflicting legal obligations. Fed. R. Civ. P. 19(a)(ii). If Local 964 were to file suit in another forum to protect its interests, that action could subject Keal Driveaway to the double-bind of a judgment in this case vacating the NJSSC ruling and a judgment in another case ordering that the same ruling be enforced. See Schlumberger Indus., Inc., 36 F.3d at 1286-87 (potential for "whipsaw" favored a finding that a party is necessary); see also Window Glass Cutters League v. American St. Gobain Corp. , 428 F.2d 353, 354-55 (3d Cir. 1970) (potential for inconsistent results made each of two disputing unions necessary parties to an action seeking an order to arbitrate). Fairness to both Keal Driveaway and Local 964 thus requires the joinder of the other disputing local union in this case.

B.

Since Local 964 is a necessary party to this litigation, and since no party challenged the finding that Local 964 is not subject to suit in the United States District Court for the Western District of Virginia, we must next inquire pursuant to Rule 19(b) whether the action could proceed without Local 964's presence. The first point of consideration under that rule -- the extent to which "a judgment rendered in the person's absence might be prejudicial to the person or those already

6

parties" -- addresses the same concerns as does Rule 19(a)(2). As we have noted, if this suit were to proceed without Local 964, that local could be deprived of the victory it won in arbitration, while Keal Driveaway could be whipsawed by inconsistent obligations. See Schlumberger Indus., Inc., 36 F.3d at 1287-88. As to the second factor, the district court could not have tailored its relief to lessen or avoid that prejudice -- indeed, in order to reach a judgment on the merits of the case, the court could not have avoided addressing the validity of the NJSSC's decision. Finally, Local 171 could secure an adequate remedy simply by bringing an action in Ohio, where Local 964 is amenable to suit. See Ranger Fuel Corp. v. Youghiogheny & Ohio Fuel Co., 677 F.2d 378, 381 (4th Cir. 1982). With these three factors weighing so heavily in favor of a finding of indispensability, a court could not "in equity and good conscience" proceed in the absence of Local 964.

C.

Several additional points merit mention. Local 171 argues that it now represents the employees who have transferred from Orrville and therefore that Local 964 no longer has an interest in this litigation. We disagree. To permit Local 171 to nullify Local 964's arbitral victory in court by the ploy of absorbing and silencing the transferring employees would be to give little effect to the private dispute resolution mechanism chosen by the parties -- a mechanism that Congress intended to be the primary method for solving these employment disputes. See, e.g., Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562-63 (1976). We recognize that unions and their subdivisions normally enjoy broad discretion in their resolution of the conflicting interests of their members. See Humphrey v. Moore, 375 U.S. 335, 349-50 (1964). But for those employees that transferred in reliance on the NJSSC's order, Local 171's assurance that it will now consider their interests, which it previously opposed, must provide little solace.**3**

Local 171 further contends that in a hybrid suit under section 301 of the LMRA a plaintiff may at its discretion sue the employer, the

_____

**3** In resolving this case, we in no way imply rejection of Local 171's claim that it represents the transferred employees in matters other than those arising out of the NJSSC panel's May 1997 decision.

7

union, or both, <u>see</u>, <u>e.g.</u>, <u>DelCostello v. International Bhd. of Teamsters</u>, 462 U.S. 151, 164 (1983), and thus by implication that other labor organizations such as Local 964 are not necessary parties to such cases. This is simply incorrect. It is true that an employee or local union may maintain separate actions for distinct injuries resulting from an employer's breach of contract and a union's breach of its duty of representation in the handling of a subsequent grievance. <u>Czosek v. O'Mara</u>, 397 U.S. 25, 28-29 (1970). But the mechanism of the hybrid suit does not override the fundamental principle that "no court can adjudicate directly upon a person's right, without the party being either actually or constructively before the court." <u>Shields v. Barrow</u>, 58 U.S. (17 How.) 130, 141 (1855) (internal quotation marks omitted); <u>see</u>, <u>e.g.</u>, <u>DelCostello</u> , 462 U.S. at 168 n.17 (noting that even when one sues the union, the inability to sue the employer would "foreclose use of such equitable remedies as an order to arbitrate").

Here, Local 964 initiated a grievance proceeding to obtain an interpretation of a seniority provision in a contract to which it was a party. That proceeding, styled <u>Local 964 v. Keal Driveaway Company & Local 171</u>, ended in favor of Local 964, and this suit ensued. Local 964, however, is not now present, and no party to this case shares its incentive to defend the joint panel's result. The only defendant in this action, Keal Driveaway, was indifferent to the result of the grievance proceeding. At most a nominal party to a dispute between two locals, the company expressly declined to take a position before the NJSSC. Keal Driveaway's obvious concern extended only to the settlement of this seniority question with a minimum of labor strife. Rather than rely on what is at best a disengaged, nominal party to defend Local 964's victory in the underlying arbitration, the district court found that Local 964 was an indispensable party to this action. This was not error.

III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>

8