VADER H. VAN SLYKE v. GEORGE B. NORRIS AND OTHERS.[1]

April 11, 1924.

No. 23,683.

**Stockholder not entitled to recover for "control value," under his preference right to take additional stock.**

1. The Metropolitan National Bank increased its capital stock from $300,000 to $500,000 and fixed the price of the new stock at $130 per share to be paid in cash. Stockholders took only 4 shares within the 60 days in which they had the exclusive right to take the stock. Three months later, no other applications having been received, all except the 4 shares was sold to defendants. Plaintiff, claiming a preference right to a majority of the stock and that that

[1]Reported in 198 N. W. 409.

amount would have given him control of the bank, brought an action for money had and received to recover the so-called "control value" of the stock to which he claimed to have been entitled. *Held* that plaintiff never had a preference right to enough stock to give him control of the bank and could not recover the so-called "control value" of the stock claimed; that defendants paid full value for the stock and obtained nothing which plaintiff was entitled to recover as money had and received for his benefit; and that plaintiff's offer failed to comply with the terms of sale and gave him no right to the stock even if not made too late.

**Stockholders entitled to opportunity to take proportionate share of new stock.**

2. It is the general rule that, where a corporation increases its capital stock, its stockholders are entitled to a reasonable opportunity to take their proportionate share of the new stock.

**They may transfer preference rights.**

3. A stockholder may transfer his preference right.

**Such right does not belong to holder of option.**

4. Only an actual stockholder or his transferee possesses this right; the holder of a mere option or executory contract to purchase stock does not possess it.

Action in the district court for Hennepin county to recover $70,700 for money had and received. The case was tried before Baldwin, J., who when defendants rested denied their motion for dismissal and their motions for a directed verdict, and a jury which returned a verdict for $92,827.40. From an order granting defendants' motion for judgment notwithstanding the verdict, plaintiff appealed. Affirmed.

*H. V. Mercer* and *George Hoke*, for appellant.

*Allen & Fletcher* and *Jay W. Crane*, for respondents.

TAYLOR, C.

Plaintiff brought this action for money had and received, claiming that, when the Metropolitan National Bank of Minneapolis increased its capital stock, he had the right to purchase 1,010 shares

of the new stock; that defendants purchased and received this stock; that they paid therefor the sum of $131,300; that the stock was worth the sum of $202,000; and that he is entitled to recover from them the difference of $70,700. The trial resulted in a verdict for plaintiff. The court directed judgment for defendants notwithstanding the verdict, and plaintiff appealed.

We will assume, without deciding, that the claims asserted by plaintiff at the trial may be litigated and determined under a complaint for money had and received, and proceed to consider whether the facts shown are sufficient to establish a cause of action.

On October 17, 1917, the par value of the capital stock of the bank was $300,000. On that date the stockholders, by unanimous vote, adopted a resolution that the capital stock be increased in the sum of $200,000; that this stock be offered at $130 per share, pro rata, to such of the stockholders as should subscribe and pay for it on or before December 17, 1917; and that the stock not sold on or before that date should be sold to such persons as the subscription committee named in the resolution should decide to be for the best interests of all the stockholders. The resolution also directed the subscription committee to obtain written waivers for the files of the bank, on or before December 17, 1917, from all stockholders not subscribing for their pro rata share of the new stock. Plaintiff was the presiding officer at the meeting of the stockholders at which this resolution was adopted.

On November 7, 1917, the subscription committee sent a letter to each stockholder notifying him of the action taken at the stockholders' meeting; that he was entitled to purchase his proportionate share of the additional stock at $130 per share; that he had until December 17, 1917, in which to purchase it, and that the committee had been appointed to place for the best interests of the bank such stock as the holders of the old stock did not purchase. The letter directed the stockholder to send a check to the bank for the number of shares which he wished to purchase, and, in case he did not wish to purchase any, requested him to sign and return a waiver of the right to purchase, which was inclosed. Only 4 shares were purchased by the stockholders within the specified time. No waiv-

ers were returned. Thereafter the subscription committee endeavored to sell the stock to outsiders, but without success. On April 1, 1918, the 10 defendants, all of whom were directors of the bank and 5 of whom were members of the subscription committee, agreed to buy the entire block of new stock except the 4 shares previously sold, and on that day executed a joint promissory note for $260,000 to the Mechanics and Metals National Bank of New York for the purpose of procuring the necessary funds. Defendant Barton immediately took this note to New York, and, on April 3; 1918, completed negotiations for the loan; and on April 4, 1918, the Mechanics and Metals Bank placed the sum of $260,000 to the credit of the Metropolitan National Bank as a special deposit of the amount in which its capital stock had been increased, and certified to the comptroller of the currency that the whole amount of such increase had been paid in, Upon this certificate the comptroller of the currency thereafter issued his certificate that the capital stock of the Metropolitan National Bank of Minneapolis had been increased in the sum of $200,000 and that such increase had been approved.

It is practically undisputed that $130 per share was the full value of the stock. Defendants' claim, and it is not seriously disputed, is that both the book value and market value of the old stock was less than that, and that they were unable to dispose of the new stock to outside parties for the reason that it was not worth the amount at which it was offered.

Plaintiff bases his action on the claim that, although the actual value of the stock was only $130 per share, the control of the bank was of sufficient value to make a block of stock which would secure such control worth $200 per share to those who held it. He says in his brief:

"The control stock has, in the marts of trade, and in actual life, a value not in the minority or segregated amounts. That value is customarily added to control stock by reckoning a certain per cent on the amount of deposits."

He presented testimony to the effect that the control value estimated in this way would add $70 per share or more to the actual

value of the controlling stock, and this is the amount which he seeks to recover.

Although the damages recoverable by a stockholder who has been refused stock to which he had a preference right are usually measured by the amount by which the market value of the stock exceeded the price at which he was entitled to obtain it, we shall assume, but are not to be understood as deciding, that the so-called "control value" contended for by plaintiff may be recovered in proper cases.

Plaintiff had been president of the bank for several years. He resigned as president and became chairman of the board of directors on November 1, 1917, under an agreement which was thereafter annulled as illegal and has led to two lawsuits. Van Slyke v. Andrews, 146 Minn. 316, 178 N. W. 959, 12 A. L. R. 1068; and Van Slyke v. Metropolitan National Bank, 155 Minn. 319, 193 N. W. 470.

At the annual stockholders' meeting in January, 1918, plaintiff was dropped from the board of directors and ceased to be an officer of the bank. Defendants were in control. For the purpose of obtaining control, plaintiff procured a large number of options to purchase the old stock. For the purposes of this case, we take plaintiff's own statement of his holdings as set forth in his brief. According to this statement, he owned 151 shares and held options to purchase 1,385 shares of the old stock. He also held assignments from holders of old stock of the right to purchase 92 shares of the new stock. On April 4, 1918, he served on the bank a notice and demand asserting ownership and control of a majority of the stock, protesting against issuing the new stock, demanding that a meeting of the stockholders be called for the purpose of having the proposition submitted to them, further demanding that no new stock be issued until he could be heard before the comptroller of the currency, further demanding that he be allowed to take his pro rata share if any new stock was issued, and giving notice "that if after a hearing, the Comptroller of the Currency should advise the issue of said increased stock, that he hereby offers the sum of two hundred dollars ($200.00) per share for such increase and

tenders herewith a cashier's check for the sum of $1,000.00 as earnest money and on account of such proposed purchase."

Defendants ignored this notice. They claim that plaintiff had threatened to make them trouble; that giving this notice was merely an attempt to lay a foundation for a lawsuit; that plaintiff had neither the intention nor the ability to take the stock at the price named; that in order to increase the capital stock of a bank the entire amount of the increase must be actually deposited and that fact established to the satisfaction of the comptroller of the currency; that plaintiff's offer did not comply with the terms of sale; that the conditions attached to it and the tender of only $1,000 of the $400,000 ostensibly offered show that it was not made in good faith; and that in any event the offer came too late.

It is the general and perhaps universal rule that, where a corporation increases its capital stock, the holders of the old stock are entitled to a reasonable opportunity to take their proportionate share of the new stock, unless there is some statutory or charter regulation providing for a different disposition of it. See cases cited in 9 Ann. Cas. 745, and Ann. Cas. 1918B, 132. A stockholder may sell and transfer his preference right to purchase the new stock. But only an actual owner of old stock or his transferee has or can exercise such preference right. The holder of an option to purchase old stock or of an executory contract for its purchase, does not possess that right. 26 Am. & Eng. Enc. (2d Ed.) 948; 14 C. J. 397; Schmidt v. Marconi Wireless Tel. Co. 86 N. J. Law, 183, 90 Atl. 1017, Ann. Cas. 1918B, 131.

Plaintiff makes no claim that he ever exercised his options to purchase except in one instance, nor that he ever became the actual owner of any of the stock covered by these options. He bases his claim on the fact that he held these options, but holding them gave him no preference right to the new stock. Consequently he never had a preference right to a sufficient amount of the new stock to give him control of the bank, and has failed to establish the state of facts on which he predicates his right to recover. He had a preference right, however, if properly and seasonably exercised, to the proportionate amount of new stock represented by the

151 shares of old stock owned by him, and a further preference right, as transferee, to 92 shares of the new stock. But, if he had taken all the new stock which he had a right to take, it would fall far short of giving him control of the bank, and, therefore, the extraordinary value which he asserts that controlling stock possesses would not attach to it. It would have only the same actual or market value as other minority stock. And the evidence will not warrant a finding that such value exceeded $130 per share, the price paid by defendants. Consequently defendants have obtained nothing which plaintiff is entitled to recover from them as money had and received for his benefit.

Furthermore plaintiff was allowed 60 days in which to take his proportionate share of the stock or such part thereof as he wished by merely depositing the price. Requiring the deposit of the full price was proper, for the national banking act requires the whole amount of the increase to be paid in. Plaintiff did not avail himself of this privilege and his absolute right to his proportionate share of the stock terminated at the expiration of the 60 days. Plaintiff lays some stress on the fact that waivers of the right to take the new stock were not obtained from the stockholders. The resolution expressly provided that any stock not taken within the prescribed period could be disposed of by the committee, and this power was in no manner conditional upon obtaining waivers. Conceding that plaintiff had the right to take his share at any time before it was disposed of to others, he did not do so. The agreement under which the stock was sold was made on April 1, the arrangement for depositing the purchase price was completed on April 3, and the purchase price was actually deposited on April 4 in the manner required by the regulations of the banking department.

Plaintiff took no action until April 4 on which date he made the offer previously mentioned. This offer was clearly insufficient to create any legal right in plaintiff, even if made before the stock had been disposed of to others. It was not absolute but conditional, and was not accompanied by a tender of the purchase price, nor even by an unconditional promise to pay the purchase price. The stockholders had duly authorized the issuance of the stock and

specified the terms of sale. These required payment in full at the time of sale. Plaintiff could acquire a right to the stock only by complying with the prescribed terms. He could acquire no right thereto by making an offer containing conditions which were not accepted and which he had no right to impose.

Plaintiff wholly failed to establish a cause of action and the learned trial court correctly directed judgment for the defendants. Order affirmed.