**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PAMELA DICKSON, Individually and
derivatively on behalf of Schmidt
Baking Company, Incorporated,
<u>Plaintiff-Appellee,</u>

v.

JOHN MORRISON; JOHN L. STEWART;
ROBERT W. FILIPPI; JOSEPH E.
STANLEY; HILARY L. KLUG; RICHARD         No. 98-2446
G. KOESTER; SCHMIDT BAKING
COMPANY, INCORPORATED,
<u>Defendants,</u>

v.

C. PETER SMITH; C. PETER SMITH,
JR.; LEONARD V. BUNCE,
<u>Movants-Appellants.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-98-62-JFM)

Argued: June 7, 1999

Decided: July 27, 1999

Before WILKINSON, Chief Judge, and HAMILTON
and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Earl Gray, GOODELL, DEVRIES, LEECH & GRAY, L.L.P., Baltimore, Maryland, for Appellants. George Faulkner Ritchie, IV, PIPER & MARBURY, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Andrew Gendron, GOODELL, DEVRIES, LEECH & GRAY, L.L.P., Baltimore, Maryland, for Appellants. Michael Esher Yaggy, PIPER & MARBURY, L.L.P., Baltimore, Maryland; Marc S. Rosen, SCANLAN, ROSEN & SHAR, L.L.C., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

C. Peter Smith, C. Peter Smith, Jr., and Leonard V. Bunce (Appellants) appeal the district court's grant of a preliminary injunction to Pamela Dickson enjoining the issuance of new stock in Schmidt Baking Company until after a stockholder meeting could be convened. Appellants argue that the district court lacked subject matter jurisdiction over Dickson's motion for a preliminary injunction, and that even if it possessed jurisdiction, the district court erred in granting the motion. We conclude that the district court properly asserted jurisdiction over Dickson's motion and that it did not err in granting the motion. We therefore affirm the district court's grant of a preliminary injunction.

I.

Pamela Dickson is a shareholder of Schmidt Baking Company (Schmidt or the Company), a Maryland corporation engaged in the manufacture, distribution, and sale of bread products throughout the state of Maryland. Prior to the issuance of the stock option plan

2

described below, the stockholders of Schmidt were composed of three groups: the "Bowyer shares," of which Dickson is a member; the "Smith shares," which include C. Peter Smith, the CEO of Schmidt, and his sister, Susan Smith House; and the "Obrecht Trust shares." Through late 1997, the Bowyer shareholders collectively owned 40.63% of the outstanding Schmidt common stock, Smith and his sister owned 42.82% of the stock, and the Obrecht Trust shareholders owned the remainder, approximately 16.55%. Until January 1, 1998, Smith also controlled the Obrecht Trust shares pursuant to a Voting Trust agreement, which gave him effective control over almost 60% of the shares. On January 1, 1998, the Voting Trust Agreement ended, and the Obrecht Trust shareholders reasserted control of the Obrecht Trust shares.

During 1997, the Bowyer shareholders and Obrecht Trust shareholders discussed selling their interest in Schmidt, which, combined, constituted a majority of the outstanding Schmidt common stock, after the Voting Trust expired. These shareholders informed Smith that they were interested in selling their interests in Schmidt to a third party and asked Smith whether he and the other Smith shareholders also would be interested in selling their interests in the Company. Smith responded that he was not interested in selling Schmidt generally or his minority interest particularly. In November 1997, prior to the expiration of the Voting Trust, Schmidt's board of directors approved a stock option plan (the Plan) that awarded to Smith and three of Schmidt's vice-presidents, namely, John Morrison, John L. Stewart, and Robert W. Filippi, options to purchase a total of 8,375 shares of Schmidt stock at $138 per share.[1] The Plan did not offer the Bowyer shareholders and Obrecht Trust shareholders the opportunity to maintain their proportionate interest in Schmidt.

Smith and the three Schmidt vice-presidents all exercised the options granted to them under the Plan and purchased the stock for cash (the 1997 stock issuance). After the stock options were exer-

_____

[1] The motive of the board of directors in offering the stock options to Smith and key management personnel he hired, who collectively had guided Schmidt from financial ruin to financial security in the past few years, was "to keep the well-functioning group together and to give them greater incentive to perform well." (J.A. at 183 n.2.)

3

cised, Smith controlled approximately 45.6% of the outstanding Schmidt stock, his sister owned 4.7% of the stock, and the other officers who were part of the Plan controlled 6% of the stock.[2] The board of directors did not submit the Plan to a shareholder vote prior to its approval and only informed the shareholders of their actions in a Memorandum dated December 12, 1997, after the stock options were exercised.

On January 9, 1998, Dickson filed a verified complaint and request for injunctive relief in the United States District Court for the District of Maryland against Schmidt, Schmidt's board of directors (C. Peter Smith, C. Peter Smith, Jr., and Leonard V. Bunce), the three Schmidt vice-presidents, and three other members of Schmidt's Executive Committee (Joseph E. Stanley, Hilary L. Klug, and Richard G. Koester) (collectively Defendants). Jurisdiction was premised on diversity pursuant to 28 U.S.C.A. § 1332, and the complaint stated claims under Maryland law. On January 23, 1998, Dickson filed an amended complaint and request for injunctive relief. The amended complaint alleged that Defendants instituted a stock option plan for Smith, Filippi, Morrison, and Stewart without the approval of a two-thirds vote of the shareholders, and that the plan was solely designed to entrench the officers and directors of Schmidt in the management of the Company and to prevent other shareholders from lawfully pursuing a sale of their controlling interest in the Company. In Count One, Dickson sought relief on her own behalf from Defendants for a violation of her preemptive rights on the ground that she, and all other shareholders in Schmidt, were entitled to purchase newly issued stock by the Company in order to maintain their percentages of ownership in the Company. In Counts Two and Three, Dickson sought relief derivatively on behalf of Schmidt from the individual Defendants for breach of the duty of loyalty and breach of the duty of care for, inter alia, approving the stock option plan.

_____

[2] According to Appellants' calculations, Stewart, Filippi, and Morrison collectively owned 4.78% of Schmidt's stock after exercising their stock options. Whether the correct number is 6% or 4.78% is of no import because combined, Smith and the three vice-presidents owned over 50% of the stock.

4

Dickson moved for partial summary judgment on Count One (pre-emptive rights) of her amended complaint. Defendants cross-moved for partial summary judgment on Count One. After holding a hearing on the motions on July 2, 1998, the district court issued an Order dated August 20, 1998 (the August 20 Order) with an accompanying opinion granting Dickson's motion for partial summary judgment and denying Defendants' cross-motion for summary judgment. The August 20 Order declared the 1997 stock issuance to be in violation of Dickson's preemptive rights because it failed to offer her the opportunity to maintain her proportionate interest and voting power in Schmidt. The August 20 Order also rescinded the actions of the board of directors that resulted in the issuance of said stock to Smith, Morrison, Stewart, and Filippi.

In response to the district court's August 20 Order, on August 24, 1998, Appellants, acting as the board of directors, sent out a "Preemptive Rights Notice" (the Notice) to all existing stockholders of the Company informing them of their right to purchase a proportional interest in the latest issuance of 19,175 shares of the Company's stock at $235 per share within two weeks of the notice (the 1998 stock issuance).[3] The Notice stated that failure to accept the offer would be deemed to be an irrevocable waiver of the right to purchase such shares. The Notice further recited that the remaining unpurchased shares of Schmidt stock would be distributed to certain unnamed employees of the Company "who have been instrumental in returning the Corporation to its current status as a healthy, profitable business from its recent position of near insolvency where its accountants questioned the Corporation's future as a going concern." (J.A. at 1067.) Dickson filed a motion for a temporary restraining order and preliminary injunction against Schmidt and Appellants to prohibit the issuance of any new shares in Schmidt until after a shareholder meeting was convened to consider the current composition of Schmidt's board of directors, or, in the alternative, to extend the time in which Schmidt's shareholders had to exercise their preemptive rights by two months.

_____

[3] The 19,175 shares of common stock were authorized but unissued shares.

5

The district court held a hearing on Dickson's motion on September 2, 1998. At the conclusion of the hearing, the district court orally granted Dickson's motion for a preliminary injunction and prohibited Schmidt and Appellants from issuing new shares in Schmidt until after a shareholder meeting. The district court memorialized its ruling in an Order dated September 16, 1998 (the September 16 Order). On September 22, 1998, Appellants noted a timely appeal of the September 16 Order to this Court.[4]

II.

Appellants first argue that the district court lacked subject matter jurisdiction over Dickson's motion for a preliminary injunction to enjoin the 1998 stock issuance because other Schmidt shareholders were necessary and indispensable parties to the action under Rule 19 of the Federal Rules of Civil Procedure and the presence of those shareholders would have destroyed diversity, the basis of the district court's jurisdiction. Dickson counters that any error by a district court in failing to join necessary and indispensable parties is not a jurisdictional defect and cannot divest the district court of subject matter jurisdiction over the parties properly before it, i.e., Dickson and Appellants. A district court's assertion of jurisdiction is a legal determination that this Court reviews de novo. See Yarnevic v. Brink's, Inc., 102 F.3d 753, 754 (4th Cir. 1996).

Rule 19 sets forth a two-step inquiry for a district court to undertake in determining whether a person should be joined in an action. First, the district court must determine whether a person is "necessary" to the action under Rule 19(a).[5] If the court determines that the

_____

[4] Schmidt noted a timely appeal of the September 16 Order on October 2, 1998. Schmidt's appeal was then consolidated with the appeal of Appellants. At the shareholder meeting ordered by the district court, four new individuals (including Dickson) were elected to Schmidt's board of directors, which had been increased to five members. The new board voted to dismiss Schmidt's appeal. Schmidt dismissed its appeal on or after December 10, 1998.

[5] Rule 19(a) provides, in pertinent part, as follows:

> A person who is subject to service of process and whose joinder
> will not deprive the court of jurisdiction over the subject matter

6

person is "necessary," it must then determine if the person is "indispensable" to the action under Rule 19(b).**6** Where joinder of necessary and indispensable persons would destroy complete diversity, and diversity is the only basis for subject matter jurisdiction, the action must be dismissed. See Schlumberger Indus. v. National Sur. Corp., 36 F.3d 1274, 1288 (4th Cir. 1994). Thus, if other Schmidt shareholders were necessary and indispensable persons to Dickson's motion for a preliminary injunction, and the joinder of those shareholders would destroy complete diversity, Dickson's motion must be dismissed for want of jurisdiction.**7** In determining whether to dismiss Dickson's

_____

> of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).
**6** Rule 19(b) provides as follows:

> If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).
**7** Dickson relies on Koehler v. Dodwell, 152 F.3d 304 (4th Cir. 1998), for the proposition that a court's mistaken decision to proceed in the absence of an interested person does not deprive the court of the power to adjudicate as between the parties already before it. Id. at 309 n.7. To

7

motion, we proceed pragmatically, "examin[ing] the facts of the particular controversy to determine the potential for prejudice to all parties." Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 918 (4th Cir. 1999).

Our preliminary inquiry is whether the absent Schmidt shareholders were "necessary" to Dickson's motion for a preliminary injunction. A person is "necessary" to an action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the disposition of the action in the person's absence would as a practical matter impair or impede the person's ability to protect an interest relating to the subject matter of the action or leave any of the persons already parties subject to the risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. See Fed. R. Civ. P. 19(a). In this case, Appellants argue that Schmidt shareholders were necessary because the injunctive relief ordered by the district court impaired or impeded the ability of the absent shareholders to protect their interests by enjoining the issuance of new stock to them. Citing Schlumberger, Appellants also argue that the district court's injunction exposed them to a substantial risk of incurring inconsistent obligations because the district court's determinations would not be binding upon a state court considering similar issues in parallel litigation involving absent shareholders, who could initiate an action seeking identical, similar, or opposite relief sought by Dickson.

_____

the extent that Schlumberger is not consistent with Koehler, Schlumberger controls because it was decided first. See Industrial Turn-around Corp. v. NLRB, 115 F.3d 248, 254 (4th Cir. 1997) ("A decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." (internal quotation marks omitted)). Moreover, the proposition relied upon by Dickson was dicta not necessary to the holding in Koehler. See Koehler, 152 F.3d at 309 n.7. Recently, in Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915 (4th Cir. 1999), we reaffirmed the principle enunciated in Schlumberger-- that if a party that is necessary and indispensable under Rule 19 cannot be joined in a suit, the suit should be dismissed. See id. at 917-18.

8

We do not find these arguments to be persuasive. Appellants' first argument fundamentally misunderstands the purpose of the 1998 stock issuance, which by the terms of the Notice was not to allow existing shareholders of Schmidt to purchase additional shares of Schmidt common stock, but to allow Schmidt shareholders to exercise their preemptive rights. Under the doctrine of preemptive rights, "when additional stock is issued, those already having shares, are held to have the first right to buy the new stock in proportion to their holdings." Ross Transp., Inc. v. Crothers, 45 A.2d 267, 270 (Md. 1946). Rather than impeding or impairing the ability of absent shareholders to protect their proportionate interests in Schmidt, Dickson's motion allowed the absent shareholders to maintain their interests without expending resources to do so because their rights are preserved by Dickson's motion. The interests of the absent shareholders, therefore, did not require the joinder of these shareholders in Dickson's motion.

Appellants' second argument fails because the district court's grant of a preliminary injunction in the absence of other Schmidt shareholders did not present a practical possibility of "whipsaw" that this Court feared in Schlumberger. In Schlumberger , the party that sought joinder under Rule 19 was a corporation involved in two ongoing declaratory judgment suits, one in federal district court and one in state court, with its insurance companies to determine the responsibilities of the insurance companies for the costs incurred by the corporation in cleaning up its contaminated property. See 36 F.3d at 1277. We concluded that if the district court were to proceed with fewer than all of the corporation's insurers as parties, the corporation could be "whipsawed" by inconsistent judgments and receive less than full coverage. See id. at 1286-87. In this case, not only were there no other suits pending against Schmidt and its officers by Schmidt shareholders, there was nothing before the district court that suggested a "substantial likelihood" of such suits. See Coastal Modular Corp v. Laminators, Inc., 635 F.2d 1102, 1108 (4th Cir. 1980) (affirming trial court's denial of joinder of the Navy as a party under Rule 19(a) where the defendant "could only theorize the possibility that the Navy would institute suit against it"). Because the Rule 19 inquiry is a "practical one" that is committed to "the sound discretion of the trial court," id., mere speculation that the absent shareholders could initiate suits resulting in Appellants facing inconsistent obligations did not require joinder of these shareholders in Dickson's motion.

9

In sum, because the absent Schmidt shareholders were not "necessary" parties under Rule 19(a) to Dickson's motion for a preliminary injunction, they were not required to be joined in Dickson's motion, and, therefore, could not destroy diversity between Dickson and Appellants. The district court, therefore, correctly asserted subject matter jurisdiction over Dickson's motion.

III.

Appellants next argue that the district court erred in granting Dickson's motion for a preliminary injunction enjoining the 1998 stock issuance. First, Appellants argue that the district court failed to follow the proper legal standard for granting injunctive relief. Next, Appellants argue that the district court's order of injunctive relief was based upon its August 20 Order granting partial summary judgment to Dickson, which was erroneous as a matter of law. We address these arguments in turn, reviewing the district court's grant of a preliminary injunction for abuse of discretion, see Planned Parenthood of the Blue Ridge v. Camblos, 155 F.3d 352, 359 (4th Cir. 1998) (en banc), cert. denied, 119 S. Ct. 1031 (1999), and its underlying findings of fact for clear error, see Gilliam v. Foster, 61 F.3d 1070, 1078 n.5 (4th Cir. 1995) (en banc). We reverse factual findings under the abuse of discretion standard "only if [we] on the entire evidence [are] left with the definite and firm conviction that a mistake has been committed." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 358 (4th Cir. 1991) (internal quotation marks omitted).

The standard for granting a preliminary injunction in this Circuit is the balancing-of-hardship analysis set forth in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). In making this analysis, a district court must consider the following four factors:

> (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,

> (2) the likelihood of harm to the defendant if the requested relief is granted,

> (3) the likelihood that the plaintiff will succeed on the merits, and

(4) the public interest.

Rum Creek Coal, 926 F.2d at 359. The two most important factors for the district court to consider are the possible irreparable harm to the plaintiff if injunctive relief is not granted and the harm to the defendant if injunctive relief is granted. See id. The district court must first find that the plaintiff has made a "clear showing" of irreparable harm that is "`neither remote nor speculative, but actual and imminent.'" Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991) (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)). Once the court has made this finding, it may proceed to balance this harm against the harm to the defendant if the preliminary injunction is granted. See id. The district court then determines the likelihood of success on the merits on a sliding scale as follows:

> If, after balancing those two factors, the balance tips decidedly in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation. As the balance tips away from the plaintiff, a stronger showing on the merits is required.

Rum Creek Coal, 926 F.2d at 359 (internal quotation marks and citations omitted).

A.

First, Appellants argue that the district court abused its discretion by failing to follow the proper legal standard for granting injunctive relief. In particular, Appellants argue that the district court failed to find that Dickson had made a "clear showing" of irreparable harm that was "neither remote nor speculative, but actual and imminent." (Appellants' Br. at 24 (internal quotation marks omitted).) Appellants' argument requires us to examine the district court's analysis of the "irreparable harm" prong of the Blackwelder test.

In granting Dickson's motion for a preliminary injunction, the district court conducted the following analysis:

11

I find under the Blackwelder standards that the plaintiff here would suffer great harm by being required to purchase this stock under this recent notice by September 8th. She really does not have time to assess whether to do it. If she needs financing, as one presumably may have to, she may have difficulty finding it in that period of time. .. . I don't think any of this would have happened but for the issuance that I found to be improper in the first instance. This harm is simply one that she should not have to suffer. Also, I find specifically that the notice is unreasonably short.

Secondly, I find no legally cognizable harm to the corporation. What has happened is because of actions that I have found to have been improper by the issuance of the stock and not respecting the preemptive rights of the plaintiff and other similarly-situated shareholders.

I think the plaintiff, on the success of the merits on the underlying issue, clearly wins. In terms of the particular issue here, I think she should win, if for no other reason, for the unreasonableness of the notice. This has not been a fair playing field. . . .

Finally, I find -- ironically, this is usually a throw-in factor. Basically, you find the public interest supports the person who you otherwise think is right on the other factors. Here, it is the public interest which I find to be the overwhelming one. That would include essentially protecting the integrity of my order and appropriate review of it.

(J.A. at 267-69.) With regard to the factor of irreparable harm, the district court found that Dickson would suffer "great harm" if a preliminary injunction did not issue because the deadline in the Notice did not give her sufficient time to decide whether to purchase the stock or, had she made the decision to purchase, to obtain the necessary documents to get financing to do so. In light of the district court's discussion of the immediate and "great" harm Dickson would suffer, we do not believe that its failure to use the talismanic words "clear showing of irreparable harm that was neither remote nor speculative, but actual and imminent" renders its analysis defective. We therefore

12

reject Appellants' argument that the district court applied the incorrect standard for granting injunctive relief.

In the alternative, Appellants argue that the district court's factual finding of irreparable harm was not supported by the evidence. In an affidavit submitted with her motion, Dickson stated the following:

> [I]t will not be possible for me to act reasonably upon [the preemptive rights] offer due to the narrow time frame involved.
>
> I will be completely unable to assemble what I presume I will need to assemble to approach a bank with a loan application in order to meet a September 8, 1998 deadline. Further, because the banks in North Carolina cannot be reasonably expected to know anything about the Company, as it does not do business in North Carolina, I would likely have to travel to Maryland to arrange for emergency financing.
>
> I have not been provided with the recent financial statements of Schmidt Baking Company, and I therefore do not have the necessary information available to make a loan application in any event.
>
> . . . .
>
> It is my view that the proposed stock sale, if permitted in the manner proposed by the Company, will cause me and the other outside shareholders . . . irreparable harm.

(J.A. at 1063-64.) Based upon this affidavit, the district court found that the Preemptive Rights Notice did not provide Dickson with sufficient time to study the offer and to act upon it and that the deadline set in the notice was unreasonably short. Contrary to Appellants' assertion, Dickson did state that she would need to go to a bank to obtain financing and that the September 8 deadline would not give her sufficient time to assemble a loan application. Furthermore, we are not persuaded by Appellants' unsupported assertion that Dickson's

13

alleged harm was not irreparable because she could receive money damages for the Company's refusal to issue stock to her. Failure to respond to the Notice by the designated date would have resulted in the permanent loss by Dickson and similarly situated shareholders of their proportionate ownership interest in the Company. Finally, we do not agree with Appellants that the district court abused its discretion in finding that the less-than-two-weeks response time provided by the Notice was unreasonably short.[8]Compare Bennett v. Baum, 133 N.W. 439, 444-45 (Neb. 1911) (holding that five-days notice did not give existing shareholders reasonable opportunity to subscribe and pay for their proportional share of stock), with Van Slyke v. Norris, 198 N.W. 409, 412 (Minn. 1924) (holding that forty-days notice gave shareholder reasonable opportunity to subscribe and pay for his proportional share of stock). Because on this evidence we are not "left with the definite and firm conviction that a mistake has been committed," Rum Creek Coal, 926 F.2d at 358 (internal quotation marks omitted), we reject Appellants' argument that the district court's factual finding of irreparable harm was not supported by the evidence.

B.

Next, Appellants argue that the district court abused its discretion in granting injunctive relief by relying upon its erroneous August 20 Order granting partial summary judgment to Dickson. Appellants' argument requires us to examine the district court's analysis of the "likelihood of success on the merits" prong of the Blackwelder test.[9]

_____

[8] Although the Notice was dated August 24, 1998, Dickson stated in her affidavit that as of the signing of the affidavit (August 26, 1998), she had not yet received such a notice.

[9] The August 20 Order is not properly before us on appeal. Although the district court granted Appellants' motion for certification to file an interlocutory appeal of the August 20 Order, this Court denied Appellants' petition for permission to appeal pursuant to 28 U.S.C.A. § 1292(b) (West 1993). Insofar as the district court granted Dickson a preliminary injunction to protect her claim of preemptive rights, however, we must review the August 20 Order. Our review focuses on whether the district court abused its discretion in determining the "likelihood of success on the merits" prong of the Blackwelder test. In other words, we must determine whether the district court abused its discretion in deciding that Dickson is likely to prevail on the merits of her preemptive rights claim when it comes up for review.

14

Because the district court clearly found that the balance of harms tipped decidedly in favor of Dickson, to receive a preliminary injunction she only needed to raise "questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Rum Creek Coal, 926 F.2d at 359 (internal quotation marks omitted). Our task, therefore, is to determine whether Dickson has made such a threshold showing.

Appellants posit two arguments that Dickson was not entitled to preemptive rights in the 1997 stock issuance. First, Appellants argue that Schmidt's charter, which empowered the board of directors to issue the remaining shares of the corporation, negated Dickson's preemptive rights by implication. Second, Appellants argue that the 1997 stock issuance was not subject to the two-thirds approval exception to preemptive rights, codified in former § 2-205(a)(7) of the Corporations & Associations Article of the Maryland Code. Instead, Appellants argue, the 1997 stock issuance was subject to the "impracticability" exception to preemptive rights, codified in former § 2-205(a)(8) because providing a right of first purchase to all shareholders of the Company would defeat the purpose for which the stock was offered, which was to reward key management personnel. We address these arguments in turn.

1.

First, Appellants argue that Dickson was not entitled to preemptive rights in the 1997 stock issuance because Article Seven of Schmidt's charter negated Dickson's preemptive rights by implication. Section 2-105(a)(10) of the Corporations and Associations Article of the Maryland Code states: "A corporation may provide by its charter . . . [f]or any definition, limitation, or denial of the preemptive rights of stockholders to acquire additional stock in the corporation." Md. Code Ann., Corps. & Ass'ns § 2-105(a)(10) (Michie 1993).[10] Article Seven of Schmidt's charter states: "The said board of directors of this corpo-

_____

[10] This section, and other statutes cited in this opinion, were amended as part of the 1995 statutory changes. The amendments do not apply to preemptive rights in existence before October 1, 1995, however, so all references are to the old sections.

15

ration is . . . empowered to authorize the issuance from time to time of the remaining shares of the common stock of this corporation without par value for such consideration as the said board may [deem] advisable." (J.A. at 457.) Citing a law review article by a corporations expert, see V. Morawetz, The Preemptive Right of Shareholders, 42 Harv. L. Rev. 186 (1928), and a 139-year-old case from Indiana, see Ohio Ins. Co. v. Nunnemacher, 15 Ind. 294 (1860), Appellants argue that the language of Article Seven suffices to satisfy § 2-105(a)(10) and negate Dickson's preemptive rights by implication. Appellants provide this Court with no controlling authority that states that a Maryland corporate charter may negate preemptive rights by implication and our review of the relevant case law has turned up no Maryland cases on point. Under these circumstances, our task is to determine whether Dickson has raised questions concerning whether a corporation's charter may negate a shareholder's preemptive rights by implication "so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation."[11] Rum Creek Coal, 926 F.3d at 359 (internal quotation marks omitted).

We believe that Dickson has made such a threshold showing. First, Dickson's argument is supported by the firm grounding of preemptive rights in Maryland law. In Maryland, the common law provided for preemptive rights as a general rule. See Real-Estate Trust Co. v. Bird,

_____

[11] We are not persuaded by Appellants' argument that we should accept the implied negation theory because Dickson failed to "present any reason" why Ohio Ins. Co. v. Nunnemacher, 15 Ind. 294 (1860), which held that a charter provision similar to Article Seven of Schmidt's charter negated preemptive rights, "would not be followed in Maryland." (Appellants' Reply Br. at 14.) In determining whether a plaintiff has "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation," we are not limited to relevant authority from other jurisdictions. Rather, we may rely on, inter alia, canons of construction, restatements of the law, treatises, recent pronouncements of general rules of policies by the state's highest court, well-considered dicta, and decisions of the state's trial courts. Cf. Liberty Mut. Ins. Co. v. Triangle Indus., 957 F.2d 1153, 1156 (4th Cir. 1992) (listing factors for a federal court to take into account when predicting how a state's highest court would rule on a particular issue).

16

44 A. 1048, 1049-50 (Md. 1899). These rights existed independently of the charter. See Thom v. Baltimore Trust Co., 148 A. 234, 235 (Md. 1930). Because § 2-205(a) of the Corporations Article of the Maryland Code carved out specific exceptions from the common-law preemptive rights rule, it must be construed strictly, see Hardy v. State, 482 A.2d 474, 478 (Md. 1984) ("Maryland courts adhere to the policy that statutes are not to be construed to alter the common-law by implication."), and other exceptions should not be inserted by judicial fiat, see Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Gartelman, 416 A.2d 734, 737 (Md. 1980) ("Where a statute expressly provides for certain exclusions, others should not be inserted.").

Second, Dickson's argument that Maryland law would not provide for negation of preemptive rights by implication is not inconsistent with the plain meaning of § 2-105(a)(10), which states: "A corporation may provide by its charter . . . [f]or any definition, limitation, or denial of the preemptive rights of stockholders to acquire additional stock in the corporation." Md. Code Ann., Corps. & Ass'ns § 2-105(a)(10) (emphasis added). The plain meaning of "provide" is "to make a proviso or stipulation." Webster's Third New Int'l Dictionary 1827 (1986). In turn, the plain meaning of "proviso" is "an article or clause . . . that introduces a condition, qualification, or limitation . . . .," id., and the plain meaning of "stipulation" is "a condition, requirement, or item specified in a contract, treaty, deed, will, or law," id. at 2245. We believe that the clear import of § 2-105(a)(10) is to allow a corporation in its charter expressly to deny or limit preemptive rights, which are provided for in the common law. Article Seven of Schmidt's charter, however, makes no mention of a denial or limitation of preemptive rights. In fact, as the district court noted in the August 20 Order, the power Article Seven granted to the board of directors to issue the remaining shares of the common stock "could comfortably co-exist with, and be subject to, the independent common-law requirement that the board honor the preemptive rights of existing shareholders when exercising its authority to issue stock." (J.A. at 187.)

Based upon these considerations, we conclude that the district court did not abuse its discretion in deciding the "likelihood of success on the merits" prong of the Blackwelder test in Dickson's favor on the

17

issue of whether Article Seven of Schmidt's charter negates preemptive rights by implication.

2.

Next, Appellants argue that Dickson was not entitled to preemptive rights in the 1997 stock issuance, because it falls under the "impracticability" exception to preemptive rights, formerly codified in § 2-205(a) of the Corporations and Associations Article of the Maryland Code. That section provides in relevant part:

> Unless the charter provides otherwise, a stockholder does not have any preemptive rights with respect to:
>
> . . . .
>
> (7) Stock, including treasury stock, issued to an officer or other employee of the corporation or its subsidiary on terms and conditions approved by the stockholders by the affirmative vote of two thirds of all the votes entitled to be cast on the matter; and
>
> (8) Any other issuance of shares if the applicability of preemptive rights is impracticable.

Md. Code Ann., Corps. & Ass'ns § 2-205(a) (Michie 1993). Appellants argue that the 1997 stock issuance is not subject to Paragraph (7) because the charter vested the board of directors with the sole discretion to issue shares, and nothing in the by-laws or certificate of incorporation authorized shareholders to vote on the issuance of stock. Instead, Appellants argue, Paragraph (8) applies because applying preemptive rights would defeat the purpose of the issuance -- rewarding key management personnel -- and thus would be "impracticable." Once again, we must determine whether Dickson has raised questions concerning the applicability of § 2-205(a) to the 1997 stock issuance "so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Rum Creek Coal, 926 F.3d at 359 (internal quotation marks omitted).

Dickson makes a good argument that § 2-205(a)(7) applies and does not strip preemptive rights from the 1997 stock issuance. By its

18

plain terms, § 2-205(a)(7) applies to an issuance of stock to corporate officers and only strips preemptive rights from such an issuance if the issuance is "on terms and conditions approved by the stockholders on the affirmative vote of two thirds of all the votes entitled to be cast on the matter." In this case, the 1997 stock issuance to Smith and the three Schmidt vice-presidents was issued without the approval of a two-thirds vote of the stockholders. As a result, the 1997 stock issuance was not "on terms and conditions approved by the stockholders by the affirmative vote of two thirds of all the votes entitled to be cast on the matter," and could not be issued without preemptive rights under the exception in § 2-205(a)(7).

Furthermore, we reject Appellants' contention that the 1997 stock issuance may still be issued without preemptive rights under the "impracticability" exception in § 2-205(a)(8) even if Appellants cannot avail themselves of the exception in § 2-205(a)(7). Section 2-205(a)(8) provides that a stockholder does not have preemptive rights in "[a]ny other issuance of shares if the applicability of preemptive rights is impracticable." Md. Code Ann., Corps. & Ass'ns § 2-205(a)(8) (emphasis added). The plain meaning of "other" is "not the same: different." Webster's Third New Int'l Dictionary 1598. We believe that § 2-205(a)(8) unambiguously applies only to stock issuances not specifically listed in exceptions (1) through (7). An issuance of stock to "an officer or other employee of the corporation," such as the 1997 stock issuance, is already covered by the exception in § 2-205(a)(7). Interpreting § 2-205(a)(8) to cover an issuance of stock to an officer or other employee of the corporation thus contravenes the plain language of the statute. Moreover, such an interpretation would allow a corporation's board of directors to circumvent the two-thirds approval requirement of § 2-205(a)(7) upon a simple showing that application of preemptive rights is "impracticable" and would invite abuse and self-dealing by corporation insiders. For these reasons, we conclude that § 2-205(a)(8) does not apply to the 1997 stock issuance.[12]

_____

[12] Even if we concluded that § 2-205(a)(8) covered an issuance of stock to an officer or other employee of the corporation, we doubt that this exception would apply in this case. Although the Court of Special Appeals of Maryland has defined "impracticability" as where "the exercise of preemptive rights . . . would . . . defeat the objective of the issuance," Valerino v. Little, 490 A.2d 756, 761 (Md. Ct. Spec. App. 1985),

19

Based upon these considerations, we conclude that the district court did not abuse its discretion in deciding the "likelihood of success on the merits" prong of the Blackwelder test in Dickson's favor on the issue of whether the 1997 stock issuance falls within one of the codified exceptions to the preemptive rights rule.

C.

In sum, the district court applied the correct legal standard in finding that Dickson had demonstrated irreparable harm warranting injunctive relief and such a finding was supported by the evidence. Moreover, the district court did not abuse its discretion in deciding that Dickson had a likelihood of success on the merits. The district court, therefore, did not abuse its discretion in granting Dickson's motion for a preliminary injunction enjoining the 1998 stock issuance.

IV.

In sum, we conclude that the district court correctly asserted subject matter jurisdiction over Dickson's motion for a preliminary injunction enjoining the 1998 stock issuance and did not abuse its discretion in granting the motion. We therefore affirm the district court's grant of a preliminary injunction.

AFFIRMED

_____

courts applying Maryland law have cabined the impracticability exception to situations where recognizing preemptive rights would interfere with the continued operation of the corporation and/or the corporation's ability to raise necessary capital, see id. (holding that impracticability existed if purpose of issuance was to break deadlock among shareholders and save corporation from dissolution); Poole v. Miller, 128 A.2d 607, 615 (Md. 1957) (holding that impracticability existed where exercise of preemptive rights would hamper building association's raising of new capital); Todd v. Maryland Casualty Co., 155 F.2d 29, 39 (7th Cir. 1946) (holding that impracticability existed where exercise of preemptive rights would prevent insurance company from raising the amount of money needed for financial rehabilitation).

20